## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| ANTHONY E. FLETCHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:09CV284-HEH |
| | ) |
| PHILIP MORRIS USA INC., DEBORAH | ) |
| J. WEBER, MARY A. GORDON, | ) |
| MICHELE C. ALLEN, and DENORRIS | ) |
| WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
### (Granting Defendants' Motion to Dismiss)

This is a civil rights action brought against Philip Morris USA Inc. and several of

its employees (collectively, "Defendants"). It is presently before the Court on

Defendants' Motion to Dismiss Plaintiff's Complaint, filed on June 1, 2009, pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. While Defendants' Motion was

pending, but before the Motion was fully briefed, Plaintiff filed his First Amended

Complaint ("Amended Complaint") pursuant to Rule 15(a) of the Federal Rules of Civil

Procedure. Accordingly, the Court will address Defendants' Motion in light of the facts

alleged in the Amended Complaint. Both parties have now filed memoranda of law

supporting their respective positions. The Court will dispense with oral argument

because the facts and legal contentions are adequately presented in the materials before

the Court, and argument would not aid in the decisional process. For the reasons stated

herein, the Court will grant Defendants' Motion to Dismiss and dismiss Plaintiff's First Amended Complaint.

## I.   BACKGROUND

Plaintiff filed his Complaint on May 4, 2009, asserting claims of race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241 (codified at 42 U.S.C. § 2000e), and race discrimination under 42 U.S.C. § 1981. Defendants filed their Motion to Dismiss on June 1, 2009. Plaintiff filed the Amended Complaint on July 9, 2009.

In his Amended Complaint, Plaintiff, a black male, alleges that he had worked as a middle manager for Defendant Philip Morris USA Inc. ("Philip Morris") for eighteen years at its manufacturing plant ("the Plant") in Richmond, Virginia. In late 2004, Plaintiff transferred to the position of Manager of Employee Engagement and Team Development at the Plant. In his new position, Plaintiff reported directly to the Plant's vice president and general manager, Defendant Deborah Weber ("Weber"), a white female. Some time thereafter, Defendant Michele Allen ("Allen"), a black female, became Plaintiff's direct supervisor, and Allen reported directly to Weber.

According to the Amended Complaint, Philip Morris employs a detailed performance evaluation policy for its management employees. Elements of the policy include detailed mid-year and full-year written performance reviews, detailed forms used to gather input from both the employee and his supervisor, a performance evaluation

2

meeting between the employee and his supervisor, an overall rating, immediate coaching and counseling about performance problems, and a detailed, written performance improvement plan for employees whose performance is not considered satisfactory. From 2001 to 2005, Plaintiff alleges he received favorable performance evaluations from his supervisors at Philip Morris.

On June 12, 2006, Allen gave Plaintiff a favorable mid-year performance review. Nine days later, Allen held a meeting with Plaintiff, in which Weber was present, to discuss Plaintiff's performance further. During the meeting, Plaintiff alleges that Allen listed a series of false and fabricated criticisms of his performance. After listening to Allen, Plaintiff said that he could demonstrate that her criticisms were wrong, but that he did not want to do so in front of her supervisor, Weber. Weber then left the meeting, and Plaintiff and Allen continued to discuss Plaintiff's performance. Shortly thereafter, Allen said she had to leave the meeting, but promised a follow-up meeting to continue the discussion. Eventually, Allen told Plaintiff that no further meeting was needed and that his performance was fine, and her original mid-year review remained in place.

On January 17, 2007, Allen gave Plaintiff his full-year performance review for 2006. Plaintiff's performance was rated as "More Expected" and in the bottom five percent of employees. Plaintiff alleges that he was surprised by the review because he had received no counseling or coaching after his mid-year review to address any performance deficiencies. Plaintiff also contends that his 2006 review was based on false

3

and fabricated negative statements and that Allen did not provide any further discussion about 2006 review as required by company policy. As a result of his low-performance rating, Plaintiff became ineligible for a performance bonus, an annual pay increase, and a promotion.

After receiving his 2006 review, Plaintiff made several attempts to correct certain aspects of the review by scheduling meetings with Defendant Mary Gordon ("Gordon"), a black female who succeeded Weber as vice president and general manager of the Plant in late 2006 and who acted as Allen's direct supervisor. Plaintiff alleges, however, that his attempts to have the 2006 review corrected were thwarted by Gordon during their meetings. Plaintiff maintains that Gordon would not let him address specific issues related to his 2006 review and defended Allen's actions without any personal knowledge of the situation.

After failing to convince Gordon to correct his 2006 review, Plaintiff contacted Philip Morris's internal investigation department to make an equal employment opportunity ("EEO") complaint. Plaintiff first met with Michele Danis ("Danis"), the company investigator assigned to his internal EEO complaint, on March 6, 2007, and continued to meet with her through May 18, 2007. Plaintiff alleges that he provided Danis extensive documentation and information disproving the criticisms contained in his 2006 review. Plaintiff also contends that he informed Danis that he was being subjected to racial and gender discrimination, as well as retaliation. Despite his complaints,

4

however, Plaintiff maintains that Danis did little to address his concerns. On June 11, 2007, Plaintiff filed a Charge of Discrimination ("EEOC charge") with the U.S. Equal Employment Opportunity Commission ("EEOC").

After filing his internal EEO complaint and his EEOC charge, Plaintiff alleges that he was subjected to retaliation and harassment by Gordon, Allen, and others. Plaintiff alleges that Gordon approached him in the hallway and told him she heard he had filed an internal complaint. Gordon then expressed that she hoped Plaintiff's complaint did not involve her. Additionally, Plaintiff alleges a litany of actions taken by Allen to harass him. Specifically, Plaintiff alleges that Allen harassed him by dramatically reducing communication with him; reducing her time in weekly project meetings with him from about one hour to twenty minutes; failing to respond to his emails requesting assistance or clarification on work assignments; withholding critical information that is normally discussed or shared at the plant leadership level from him; delegating assignments directly to his subordinates without informing him; increasing her questioning of his expense reports and delaying their approval; canceling his pre-approved trip to the Black Executive Exchange Conference, which he had regularly attended for years; questioning his request to take leave to attend his grandmother's funeral, requiring him to produce an obituary notice, and requiring him to use vacation time; walking away from conversations with him; and attending and disrupting his staff meetings. Further, Plaintiff alleges that Allen did not give him a mid-year review in 2007.

In late 2007, Allen was replaced by Denorris Williams ("Williams"), a black male, who Plaintiff alleges continued the pattern of harassment and retaliation begun by Allen. Specifically, Plaintiff contends that Williams had little communication with him; created an interview panel to conduct interviews for openings in Plaintiff's organization without informing or involving him; interviewed five to seven candidates for those openings without Plaintiff's knowledge; and excluded Plaintiff's views on hiring decisions. Plaintiff alleges that Williams systematically undermined one of his projects, the Annual Recognition Program, by delaying a budget for the program, delaying approvals for the program, and eventually providing an insufficient budget for the program. Also, Plaintiff contends that, in February 2008, Williams altered the organization charts, depriving him of a portion of his supervisory responsibilities.

Plaintiff also contends that he was harassed and retaliated against by others working at Philip Morris. On May 17, 2007, Plaintiff alleges that Steve Hunter, a white, male director, barged into his office and berated him with false accusations for ten minutes. Plaintiff also alleges that, in April 2008, Philip Morris initiated a retaliatory investigation of him, arising out of alleged complaints by several female employees and contractors that Plaintiff had raised his voice to them or discriminated against them in 2006. Further, Plaintiff alleges that, in May 2008, Lisa Rogers, a white, female supervisor, ripped a gold chain from his neck while he was walking through the Plant, claiming it was a safety violation.

6

Plaintiff received his performance review for 2007 on February 8, 2008, from Williams. Like the 2006 review, the 2007 review gave Plaintiff an overall rating of "More Expected." The low rating made Plaintiff ineligible for a performance bonus and an annual pay increase. Plaintiff alleges that he tried to highlight several errors and inaccuracies in the 2007 review to Williams. Williams said he did not know the facts of Plaintiff's situation, but that he would check into it and get back to Plaintiff. Plaintiff alleges that Williams never followed up with him about his protests, nor did he give Plaintiff a performance improvement plan to address any deficiencies.

Plaintiff then contacted Gail Clay, a white female employed in the human resources department, to discuss and rebut the criticisms in his 2007 review. On February 29, 2008, Clay met with Plaintiff, Gordon, and Williams to discuss the 2007 review, but Plaintiff alleges that Clay would not allow him to review the data he had collected to support his case. Plaintiff also contends that his supervisors could not provide any evidence to support the negative assertions in his 2007 review. Unsatisfied with their responses at the meeting, Plaintiff asked that his supervisors put their support for the negative statements in writing. Plaintiff made a second request for a written response to Clay on March 18, 2008, but Clay never responded to Plaintiff's inquiry. On June 23, 2008, Williams called Plaintiff to a meeting with Gordon and Clay. Gordon informed Plaintiff that he was being terminated because he had received a "More Expected" rating and because his performance had not improved. Plaintiff was replaced by Thomas Clark,

7

a black male.

Plaintiff asserts claims for race and gender discrimination and retaliation under Title VII against Philip Morris and race discrimination under 42 U.S.C. § 1981 against all Defendants. Defendants filed their Motion to Dismiss on June 1, 2009, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants assert that Plaintiff has failed to state a discrimination claim for which relief may be granted because he has failed to make sufficient factual allegations showing that similarly situated employees in a non-protected class were subjected to more favorable treatment than Plaintiff or demonstrating that Defendants acted with the requisite discriminatory intent. Likewise, Defendants maintain that Plaintiff has failed to state a retaliation claim for which relief may be granted because the Amended Complaint lacks sufficient factual allegations showing that Plaintiff engaged in a protected activity or that any causal connection between the adverse employment actions and the protected activity exists.

## II.   ANALYSIS

### A.   Standard of Review

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Traditionally, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Two recent

decisions of the Supreme Court of the United States, however, have refined the standard

of review this Court should apply in determining whether a plaintiff's complaint

sufficiently states a claim for relief pursuant to the requirements of Rule 8. In *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court retired the "no set of

facts" standard established in *Conley v. Gibson*, 355 U.S. 41 (1957), and held that, to

survive a motion to dismiss, a complaint must contain sufficient factual information to

"state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While it

does not require "detailed factual allegations," *Twombly* held that Rule 8 of the Federal

Rules of Civil Procedure does demand that a plaintiff provide more than labels and

conclusions stating that the plaintiff is entitled to relief. *Id.* at 555. Thus, a complaint

containing facts that are "merely consistent with" a defendant's liability "stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Rather,

a complaint achieves facial plausibility when it contains sufficient factual allegations

supporting the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In *Iqbal*, the Supreme Court expanded on *Twombly*'s teachings. The Supreme

Court stated that, because the tenet that a reviewing court must accept all of a complaint's

allegations as true does not apply to legal conclusions, *Iqbal*, 129 S. Ct. at 1949, the Court

may identify which of the Amended Complaint's allegations are entitled to the

9

assumption of truth and which allegations can be disregarded as legal conclusions. *Id.* at 1949–50. After distinguishing the well-pleaded facts from legal conclusions, the Court must then determine whether the Amended Complaint's factual allegations support a "plausible claim for relief." *Id.* at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has no "show[n]"—"that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

**B.    Plaintiff's Discrimination Claims under Title VII and § 1981**

It is within the *Twombly* and *Iqbal* framework that the Court will address Defendants' Motion to Dismiss. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 24 U.S.C. § 2000e-2(a)(1).[1] To

---

[1]Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

10

state a prima facie claim of race or gender discrimination under Title VII and § 1981,[2] Plaintiff must sufficiently allege that 1) he is a member of a protected class; 2) he was qualified for his position and his job performance was satisfactory; 3) he experienced an adverse employment action; and 4) similarly situated employees who are not members of a protected class received more favorable treatment. *Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*, 140 F. Supp. 2d 657, 663 (E.D. Va. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see James v. Booz-Allen Hamilton*, 368 F.3d 371, 375 (4th Cir. 2001). In the case of discharge, Plaintiff must sufficiently allege that his job remained open to similarly qualified applicants after he was discharged. *Johnson*, 140 F. Supp. 2d at 663 (citing *Karpel v. Inova Health Sys. Serv.*, 134 F.3d 1222, 1228 (4th Cir. 1998)).

The parties do not dispute that Plaintiff, as a black male, is a member of a protected class. Instead, Defendants' Motion primarily focuses on the third and fourth elements of Plaintiff's discrimination claims. First, Defendants assert that many of Plaintiff's allegations fail to rise to the level of adverse employment actions. Second, Defendants maintain that the Amended Complaint contains no factual allegations establishing that similarly situated employees who are not members of a protected class received more favorable treatment or that Plaintiff's position remained open to similarly

---

[2]The requirements for establishing a prima facie case of employment discrimination under Title VII and § 1981 are identical. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

situated applicants. Finally, Defendants contend that Plaintiff has failed to allege sufficient facts showing that they acted with discriminatory intent. The Court will address each of these in turn.

To constitute an adverse employment action, conduct must qualify as a "discriminatory act which 'adversely affect[s] "the terms, conditions, or benefits" of the plaintiff's employment.'" *James*, 368 F.3d at 375 (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). Adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Employment decisions falling short of "ultimate employment decisions" may constitute adverse employment actions. *James*, 368 F.3d at 375–76.

The Court finds, and Defendants concede in their brief, that Plaintiff has sufficiently alleged conduct that may constitute adverse employment actions. First, Plaintiff alleges that he was terminated by Defendants, which clearly falls within the category of adverse employment actions. *Boone*, 178 F.3d at 255. Second, Plaintiff alleges that he received two poor performance evaluations, which were then used as the basis for his termination. A low-performance rating becomes actionable when the employer uses it as a basis to alter the terms and conditions of an employee's employment. *James*, 368 F.3d at 377. Accordingly, the Court finds that the third element of Plaintiff's discrimination claims has sufficient factual support to survive a motion to

12

dismiss under Rule 12(b)(6).

Plaintiff's Amended Complaint falls short of plausibility, however, because it is devoid of any specific factual allegations that similarly situated employees, who are not members of a protected class, received more favorable treatment than Plaintiff or that Defendants acted with discriminatory intent. Plaintiff's Amended Complaint generally alleges that blacks, and black males in particular, are regularly discriminated against at Philip Morris. To support this allegation, the Amended Complaint describes eight incidents of alleged discrimination or disparate treatment by employees at Philip Morris. The only attempts Plaintiff makes to compare his *specific* situation to another similarly situated employee, however, is to make the conclusory allegations that "similarly situated whites, females and non-black males" were treated differently than Plaintiff, (*see, e.g.* Compl., ¶¶ 70, 102,) or that he has never heard of a particular action, such as a vice president attending an evaluation meeting of a supervisor's subordinate, happening to another employee. (*See, e.g.*, Compl., ¶ 48.)

From these allegations, Plaintiff contends in his brief that the Court can fairly infer that similarly situated employees of a different race or gender received better treatment than Plaintiff. However, this is precisely the type of inference—one drawn from conclusory allegations unsupported by any facts—prohibited by *Twombly* and *Iqbal*. Plaintiff makes no specific allegations concerning Defendants' treatment of similarly situated employees. Instead, Plaintiff alleges several seemingly isolated incidents that

13

bear no relation to Plaintiff's claims either substantively or temporally. Plaintiff was not involved in any of the alleged incidents, nor were any of Plaintiff's supervisors. The employees involved in the eight incidents appear to have different job titles and responsibilities than Plaintiff, and all were involved in markedly different circumstances than Plaintiff. Finally, Plaintiff provides no time frame in which these alleged incidents occurred. Absent factual allegations demonstrating that *similarly situated* employees of a different race or gender received more favorable treatment than Plaintiff, the Court cannot determine whether the treatment Plaintiff received differed from the treatment received by other employees.

Indeed, it would be difficult for a reasonable person to conclude that the factual allegations in the Amended Complaint even give rise to the *suggestion* of discrimination. To the contrary, the Amended Complaint suggests exactly the opposite. All three decision-makers involved in Plaintiff's low-performance ratings and termination—Allen, Gordon, and Williams—are members of the same race as Plaintiff, and one—Williams—was also a male. Furthermore, Defendants replaced Plaintiff with Thomas Clark, a black male and a member of the same protected class as Plaintiff. Thus, any claim of discrimination is unlikely. *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (stating that it is difficult for a plaintiff to prove discrimination when the decision-makers fall within plaintiff's protected class); *see also Coggins v. Gov't of District of Columbia*, 1999 WL 94655, at *4 (4th Cir. 1999)

14

(unpublished) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); *Williams v. Alternative Behavioral Servs.*, 2004 WL 3258906, at *7 (E.D. Va. 2004) (unpublished) ("[A]ny inference of discrimination is negated when a decision-maker is in the same protected class as the plaintiff."). In fact, Plaintiff concedes as much in his brief. (Pl.'s Resp., at 14.)

Therefore, the Court finds Plaintiff's discrimination claims against Defendants wholly implausible. Plaintiff has failed to state a prima facie case supported by well-pleaded facts that Defendants acted with discriminatory intent. Accordingly, Plaintiff has failed to show more than a mere possibility of misconduct, and, thus, he has not shown he is "entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 129 S. Ct. at 1950. Accordingly, Plaintiff's discrimination claims under Title VII and § 1981 will be dismissed.

## C.    Plaintiff's Retaliation Claim under Title VII

Title VII's anti-retaliation provision provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter. 42 U.S.C. § 2000e-3(a). To establish a prima facie claim for retaliation, Plaintiff must show 1) that he engaged in a protected activity, 2) that Defendants took adverse action against him, and 3) that a causal connection between the protected activity and the

adverse action exists. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

Title VII shields two types of activity from retaliation—opposition and participation. *See* 42 U.S.C. § 2000e-3(a). Protected opposition activities may include internal protests or complaints concerning an employer's discriminatory activities. *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Protected participation activities include making an EEOC charge or assisting in any manner in an investigation of an employer's alleged discriminatory conduct. 42 U.S.C. § 2000e-3(a). Because Plaintiff made internal complaints to Philip Morris and filed a charge with the EEOC, his claim falls under both categories of protected activity.

Title VII's plain language extends protection to an employee's opposition activity when the activity is conducted in response to an actual unlawful employment practice. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). The Fourth Circuit has also held that Title VII protects opposition activity that is directed at an employment practice that the employee reasonably believes is discriminatory and unlawful, even though the employment practice may not in fact be unlawful. *Id.* Because determining whether the employee held a reasonable belief that an employment practice is discriminatory and unlawful is an objective one, the Court may resolve the issue as a matter of law. *Id.* at 339.

For Plaintiff's internal complaint to Philip Morris's EEO investigation department to constitute protected opposition activity under Title VII, he must have held an

16

objectively reasonable belief in light of all his circumstances that a Title VII violation had

occurred. *Id.* at 340–41. As discussed above, the Amended Complaint fails to allege

sufficient facts to support a plausible claim that Defendants performed the conduct

forming the basis of Plaintiff's internal complaint with any discriminatory intent. The

Court can find no indication from the facts as pled that Plaintiff's race or gender played

any role in the low-performance ratings that led to Plaintiff's internal complaint. Thus,

the Court finds that no reasonable person could objectively believe from the facts that

Plaintiff's internal complaint was meant to oppose unlawful discrimination. Accordingly,

Plaintiff's internal complaint does not constitute a protected activity under Title VII.[3]

Plaintiff's EEOC charge, however, constitutes a protected participation activity

under 42 U.S.C. § 2000e-3(a). Employees that engage in participation activities are

extended broad protection by Title VII. *See Glover v. S.C. Law Enforcement Division*,

170 F.3d 411, 414 (4th Cir. 1999). In *Glover*, the Fourth Circuit held that the "plain

language of the participation clause itself forecloses" the Court from requiring that an

employee's EEOC charge be objectively reasonable before it can be considered protected

activity. *Id.*; *see also Cumbie v. General Shale Brick, Inc.*, 302 Fed. Appx. 192, 194 (4th

Cir. 2008) (stating that no reasonableness standard is applied to protected participation

_____

[3]Even assuming that Plaintiff's internal complaint qualifies as a protected activity, Plaintiff's retaliation claim falls short of facial plausibility because, as discussed below, the factual allegations in the Amended Complaint fail to support a plausible inference that any causal connection between Plaintiff's protected activity and Defendants' alleged retaliatory conduct exists.

activity). Thus, the Court must determine whether Plaintiff has alleged sufficient facts showing that Defendants took adverse action against him because he filed his EEOC charge.

Plaintiff alleges that, after he made his internal complaint and EEOC charge, his supervisors began a retaliation campaign against him. Plaintiff alleges that Allen, among other things, dramatically reduced her communication with him, withheld information from him, delegated work directly to Plaintiff's subordinates without informing him, increased her questioning of his expense reports, and walked away from their conversations.[4] Likewise, Plaintiff alleges that Williams continued the harassment by limiting his communication with Plaintiff, interviewing and hiring job applicants without seeking Plaintiff's input, delaying Plaintiff's work projects, and canceling Plaintiff's trip to the Black Executive Exchange Conference. Plaintiff also alleges that, on May 17, 2007, Steve Hunter, a white director, verbally berated him for something Plaintiff had not done, and, in May 2008, Lisa Rogers, a white female, ripped a necklace from his neck while he was walking through the Plant, claiming it was a safety violation. Finally, Plaintiff alleges that Defendants opened an EEO investigation on him based on three complaints they had received from female employees.

---

[4] It appears that much of Allen's alleged retaliation took place before Plaintiff filed his EEOC charge on June 11, 2007, which precludes it from supporting his retaliation claim. Nevertheless, the Court will incorporate Allen's alleged conduct, which largely mirrors Williams's alleged conduct, into its analysis of the retaliation claim to place Plaintiff's claim in the most favorable light.

Congress did not intend Title VII to create a "general civility code for the American workplace." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Thus, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Instead, to assert a successful retaliation claim, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse." *Id.* In other words, adverse action must be of the kind that would dissuade a reasonable employee from making or supporting a discrimination charge. *Id.*

In the Title VII context, Plaintiff's numerous allegations of reduced communication, withheld information, questioned expense reports, and the like amount to mere sound and fury signifying nothing. They constitute the petty slights and minor annoyances to which Title VII extends no protection, and they are not the kind of adverse actions likely to dissuade a reasonable employee from making or supporting a charge of unlawful discrimination. *See id.*; *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 331 (4th Cir. 2006). Thus, these allegations do not rise to the level of adverse actions under Title VII and fail to support Plaintiff's retaliation claim.

Without these allegations, Plaintiff is left with his allegations concerning his interaction with Lisa Rogers,[5] the EEO investigation of him by Defendants, his low-performance ratings, and his termination to support his retaliation claim. These incidents,

---

[5]Plaintiff's alleged interaction with Steve Hunter occurred before he filed his EEOC charge on June 11, 2007, and, therefore, it cannot be used to support his retaliation claim.

however, fail to rise to the level of retaliation because Plaintiff has failed to assert sufficient factual allegations showing that they qualify as material adverse actions or demonstrating that a causal connection between the alleged retaliatory conduct and Plaintiff's EEOC charge exists.

Plaintiff alleges that, in May 2008, Rogers approached him while he was walking through the Plant and ripped a gold necklace off his neck, claiming it was a safety violation. A couple of days after this alleged incident, Plaintiff alleges that Rogers approached him again and reached into his shirt to see if Plaintiff was wearing a necklace. Plaintiff provides no factual allegations, however, suggesting any link between Rogers's alleged conduct and Plaintiff's EEOC charge.   From these allegations, Plaintiff asks the Court to infer that Rogers's conduct was retaliatory in nature and performed in response to his EEOC charge.

But, it is much more likely that Rogers engaged in the alleged conduct because Plaintiff's necklace was indeed a safety violation at the Plant, a manufacturing facility. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007).   Physically removing the necklace from Plaintiff's neck may have been inappropriate, but it is not inherently retaliatory, and Plaintiff offers insufficient factual support for his assertion that it qualifies as such. Moreover, the incident with Rogers took place eleven months after Plaintiff filed his EEOC charge, further undermining the inference of causation. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (stating that two-month gap between

20

protected activity and adverse action "weaken[s] the inference of causation between the two events"). The Court therefore finds that Plaintiff has failed to allege sufficient facts showing that a causal nexus exists between his EEOC charge and Rogers's alleged conduct.

Likewise, the EEO investigation of Plaintiff by Defendants fails to rise to the level of a materially adverse action designed to retaliate against Plaintiff as required by Title VII. The investigation undertaken in response to three alleged complaints from female employees did not take place until ten months after Plaintiff filed his EEOC charge. Also, Plaintiff provides no factual allegations entitled to the assumption of truth suggesting that the investigation was in any way meant to retaliate against him for his complaints or EEOC charge. He merely alleges that the complaints arose out of his alleged actions in 2006 and that he was questioned about his relationship with Allen during the course of the investigation. Even assuming, without deciding, that the investigation rises to the level of a materially adverse action, Plaintiff's retaliation claim remains in the realm of possibility, not plausibility, because the Court cannot infer from the allegations that a causal connection between Plaintiff's EEOC charge and the investigation exists. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950.

Finally, Plaintiff's allegations that his low-performance ratings and termination constituted retaliation cannot save his claim. Plaintiff's low-performance ratings began before he made any internal complaints or filed his EEOC charge. Because his 2007

review "largely tracked" the 2006 review in content and overall rating, (Compl., ¶ 82,) it amounts to a mere continuation of the treatment Plaintiff was receiving before his protected activity. In other words, Defendants' treatment of Plaintiff with respect to his performance evaluations did not change after he filed his EEOC charge; it remained exactly the same with Plaintiff receiving a "More Expected" rating in both 2006 and 2007. The facts, therefore, fail to support a plausible inference that Plaintiff received a low-performance rating because he filed an EEOC charge.

Also, Plaintiff's termination occurred more than one year after he filed his EEOC charge. For reasons previously discussed, such a large temporal gap between Plaintiff's protected activity and a materially adverse action makes it unlikely that he was terminated in retaliation for his EEOC charge. Moreover, Defendants' asserted reason for Plaintiff's termination was Plaintiff's low-performance rating, the first of which occurred before Plaintiff's complaints and EEOC charge. Thus, Plaintiff's allegations fail to give rise to a plausible inference that Plaintiff was terminated because he filed his EEOC charge. Accordingly, Plaintiff has not shown that he is "entitled to relief" for his retaliation claim as required by Rule 8(a)(2), and his retaliation claim will be dismissed.

### III.   CONCLUSION

In the final analysis, Plaintiff has failed to state discrimination claims for which relief may be granted under Title VII and 42 U.S.C. § 1981 because the factual allegations in the Amended Complaint do not support a plausible inference that

Defendants acted with the requisite discriminatory intent.  Likewise, Plaintiff has failed to

state a retaliation claim for which relief may be granted because the factual allegations do

not plausibly show a causal connection between Plaintiff's protected activity and

Defendants' alleged retaliatory conduct.  Accordingly, pursuant to Rule 12(b)(6), as

applied in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*,

129 S. Ct. 1937 (2009), the Court will grant Defendants' Motion to Dismiss and dismiss

Plaintiff's Amended Complaint.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this **13th** day of **July 2009**.
Richmond, VA